JOSEPH W. COTCHETT (#36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (#168009)
mmolumphy@cpmlegal.com
COTCHETT, PITRE & McCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY McINTOSH, YANGJIE CHENG, PING CHEN, STEVE HAEFFELE, LEBIN CHENG, VATSAL SONECHA, and JONATHAN WONG, individually and on behalf of all those similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>McAFEE, INC.,<br><br>　　　　　　Defendant. | Case No. C06-07694 JW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　　　December 16, 2008<br>Time:　　　　10:00 a.m.<br>Courtroom:　2<br>Honorable Howard R. Lloyd |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Overview Of Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   McAfee Rejects Plaintiffs' Pleas To Resolve Dispute Before Filing Lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   McAfee Changes Its Policy In Response To Class Action. . . . . . . . . . . . . . . . . . 4

    D.   McAfee Provides Relief To The Named Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . 5

    E.   The Court Grants Plaintiffs' Motion For Attorneys Fees And Costs. . . . . . . . . . 6

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   McAfee Completed The Provision Of Class Relief No Earlier Than January 15, 2008, And As Late As March 20, 2008. . . . . . . . . . . . . . . . . . . . . . 6

    B.   Plaintiffs Request An Award Of Fees Based On Their Work Performed Up Until January 15, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   Under California Law, A Fee Award Should Be Based On Counsel's Lodestar And, If Appropriate, A Reasonable Multiplier . . . . . . 7

        2.   Plaintiffs' Counsel Request An Award Representing Their Lodestar As Of January 15, 2008 And A Multiplier Of Three. . . . . . . . . 8

        3.   Plaintiffs' Counsel Requests Reimbursement Of $4,996.23, Representing Reasonable Expenses Advanced. . . . . . . . . . . . . . . . . . . . . 11

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA**   i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beasley v. Wells Fargo Bank*
    235 Cal. App. 3d 1407 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Benson v. Kwikset Corp.*
    152 Cal. App. 4th 1254 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Compare*, *Thayer v. Wells Fargo Bank*
    92 Cal. App. 4th 819 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Glendora Community Redevelopment Agency v. Demeter*
    155 Cal. App. 3d 465 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Graham v. DaimlerChrysler Corp.*
    34 Cal. 4th 553 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

*Lealao v. Benefit Cal.*
    82 Cal. App. 4th 19 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11

*Oakland v. Oakland Raiders*
    203 Cal. App. 3d 78 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Paulson v. City of San Diego*
    No. Civ. 89-0820GT(LSP), 2007 U.S. Dist. LEXIS 43587
    at *11 (S.D. Cal. June 13, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*PLCM Group, Inc. v. Drexler*
    22 Cal. 4th 1084 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sternwest Corp. v. Ash*
    183 Cal. App. 3d 74 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trew v. Volvo Cars of N. Am., LLC*
    No. Civ. S-05-1379 RRB EFB, 2007 U.S. Dist. LEXIS 55305
    at *15 (E.D. Cal. July 30, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 224 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA**     ii

**OTHER AUTHORITIES**

California Code of Civil Procedure 1033.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Code of Civil Procedure Section 1021.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Northern District of California Civil Local Rule 54-6(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO
AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA                                    iii

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 16, 2008, before the Honorable Howard R. Lloyd, United States Magistrate Judge, Plaintiffs will move the Court for a Report and Recommendation as to (1) the exact date that Defendant McAfee Inc. ("McAfee") completed the provision of relief to former employees who are members of the putative class and (2) the fees incurred by Plaintiffs' Counsel, Cotchett, Pitre & McCarthy, as of that date and an appropriate award under applicable California law.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Mark C. Molumphy, the Court's October 17, 2008 Order Granting Plaintiffs' Motion to Dismiss; Denying Defendant's Motion for Summary Judgment; Granting Plaintiffs' Motion for Attorneys' Fees and Costs, the pleadings and records on file, and such other matters as may be presented to the Court.

## ISSUES TO BE DECIDED

1. The exact date on which Defendant McAfee completed provision of relief to former employees who are members of the putative class.

2. The fees incurred by Plaintiffs' Counsel, Cotchett, Pitre & McCarthy, as of that date, and an appropriate award under applicable California law.

LAW OFFICES COTCHETT, PITRE & MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA   1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION

In this class action, Plaintiffs allege that Defendant McAfee breached its stock option agreements with former employees by refusing to give them the contractual 90-day period to exercise their options before they expired.  Instead, while McAfee imposed a "blackout" period on exercising options while it investigated backdating by senior executives, it <u>continued to run</u> the 90-day exercise period during the blackout until the options ultimately expired.

Notably, <u>before</u> Plaintiffs filed suit, McAfee rejected Plaintiffs' pleas to extend the exercise period until after the blackout was lifted.  However, <u>after</u> the suit was filed, McAfee announced that it would provide the requested relief to all former employees.  In 2008, after litigating for over a year, McAfee finally provided $23.5 million in relief to former employees.

Plaintiffs recently moved for an award of attorneys' fees and expenses as "successful parties" under California's private attorney general statute.  Cal. Civ. Proc. Code § 1021.5. McAfee opposed the motion, claiming that the class action was not a "catalyst" for its decision to provide relief.

On October 17, 2008, the Court <u>granted</u> Plaintiffs' motion, holding that Plaintiffs were entitled to fees incurred until the point that McAfee provided full relief to all former employees. *See* Order at 11:23-26, Exhibit A to Declaration of Mark C. Molumphy ("Molumphy Decl."). However, since it had no evidence of that date, the Court asked for a Report and Recommendation of:

"(1)  The exact date on which Defendant completed provision of relief to former employees who are members of the putative class; and

(2)  The fees incurred by Plaintiffs' counsel under applicable California law."

Order at 12:4-8.  Plaintiffs submit this motion to address these two remaining questions.

First, only McAfee can confirm the <u>exact date</u> that it completed providing relief to former employees, i.e., all those other than the seven Plaintiffs.  Plaintiffs can only confirm the last day that <u>they</u> received relief, <u>January 15, 2008</u>, and have based their fee request on that date. Plaintiffs reserve the right to amend their motion if the date turns out to be later.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA

2

Second, as to the <u>amount of fees</u> under applicable California law, Plaintiffs' counsel respectfully request an award of <u>$686,122.50</u>. This amount reflects counsel's lodestar of $228,707.50 as of January 15, 2008, with a multiplier of three. In appropriate cases, California courts apply an upward adjustment to take into account the contingent risk of litigation and substantial benefits achieved from the action. These same factors favor a modest multiplier here. Indeed, the requested fee is still just <u>2.91%</u> of the $23.5 million recovered in this case.

## II.    RELEVANT PROCEDURAL HISTORY

### A.    Overview Of Case

This is a class action brought by former employees of McAfee. Plaintiffs allege that, on July 27, 2006, following an investigation into possible stock option backdating, McAfee notified the SEC that it was unable to timely file its quarterly results and ceased issuing new shares under the Company's stock option plans pending the filing of corrected financials. Molumphy Decl., ¶3. This unilateral freeze, commonly referred to as a "blackout," effectively prevented McAfee employees from exercising their earned and vested stock options as of July 28, 2006. *Id.*

Plaintiffs allege that, under McAfee's stock option agreements, former employees were entitled to have 90 days following their termination to exercise their vested stock options. *Id.*, ¶4. McAfee allegedly breached the agreements by not giving former employees 90 days to exercise their options and, instead, running the 90 day exercise period during the blackout – even though former employees were precluded by McAfee from exercising. *Id.*

### B.    McAfee Rejects Plaintiffs' Pleas To Resolve Dispute Before Filing Lawsuit

Before retaining legal counsel, and incurring the expense of filing a lawsuit, Plaintiffs repeatedly tried to resolve their dispute with McAfee, asking for either (1) the opportunity to exercise their vested options immediately or (2) in the alternative, to defer the 90 day exercise period until <u>after</u> McAfee lifted its blackout. *Id.*, ¶5. Unfortunately, McAfee rejected <u>all</u> of Plaintiffs' requests and took the <u>uniform</u> position that the 90 day period to exercise options would continue to run during the blackout, even if that meant that Plaintiffs would lose their options without an opportunity to exercise them. *Id.*

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO
AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA                      3

### C. McAfee Changes Its Policy In Response To Class Action

On December 15, 2006, after McAfee confirmed that it would not allow former employees to exercise their options, Plaintiffs filed a class action complaint. *Id.*, ¶6. Plaintiffs sued for <u>breach of contract</u> on behalf of a Class of McAfee's former employees who were unable to exercise their stock options due to the blackout imposed by McAfee as of July 28, 2006 (the "Class"). *Id.* Plaintiffs also brought <u>fraud</u> claims for Class members who left McAfee in reliance on McAfee's written representations that the exercise period would commence when the blackout was lifted. *Id.*

On January 8, 2007, <u>just three weeks after Plaintiffs filed their complaint</u>, McAfee announced that its Board had voted to extend the exercise period for former employees until after the blackout was lifted. *Id.*, ¶7. However, McAfee set a deadline of December 31, 2007, such that options still expired if the blackout was not lifted by then. *Id.* Further, the offer to exercise was not offered to former employees whose options had already expired, i.e., the majority of the Class, who were instead promised an undefined "cash" consideration at some future date. Finally, the amendment was not binding as a judgment, allowing the Board to change its mind yet again before any relief was provided. *Id.*

On February 6, 2007, McAfee filed a motion to dismiss, asserting that (1) Plaintiffs' claims were preempted by federal securities law and (2) Plaintiffs no longer had standing due to McAfee's proposed remedial measures announced on January 8, 2007. *Id.*, ¶8. On September 28, 2007, the Court entered an order on McAfee's motion to dismiss. *Id.*, ¶9. While the Court held that the Class claims for fraud were preempted, the breach of contract claim survived. The Court also rejected defendant's standing argument, holding that McAfee's remedial actions did not conclusively establish that Plaintiffs lacked standing. *Id.*

On October 26, 2007, Plaintiffs filed a First Amended Complaint against McAfee asserting a breach of contract claim on behalf of the class of former McAfee employees, and fraud claims on behalf of themselves individually. *Id.*, ¶10. The proposed class was defined as:

> All persons who were employed at McAfee and who received stock options but were unable to exercise them due to the blackout imposed by McAfee as of July 28, 2006 (the "Class").

LAW OFFICES COTCHETT, PITRE & MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA     4

The parties then engaged in meet and confer discussions about efficiently litigating and resolving the case. After submitting a Joint Statement, the Court entered its pre-trial Scheduling Order on November 15, 2007 and ordered that all discovery be completed by June 16, 2008. *Id.*, ¶11. Plaintiffs subsequently served their initial disclosure pursuant to Rule 26. However, McAfee never served an initial disclosure. McAfee filed its Answer to the First Amended Complaint and denied every class allegation and every allegation related to the breach of contract cause of action asserted by the Class. *Id.*, ¶12.

On December 21, 2007, McAfee announced that it had filed restated financial statements and amended reports with the SEC. *Id.*, ¶13. Plaintiffs' counsel then contacted McAfee to determine whether McAfee intended to provide relief to all other Class members and, if not, the basis for any exceptions. *Id.*, ¶14. McAfee refused to provide the confirmation and, instead, took the position that, since no class was certified, the named Plaintiffs could <u>not</u> know how absent Class members were being treated. *Id.*, ¶15. McAfee then served written objections to the pending discovery on the same grounds, preventing Plaintiffs from confirming that other class members would receive the same relief being offered to them – even though such confirmation would have resulted in dismissal. *Id.*, ¶16.

### D.    McAfee Provides Relief To The Named Plaintiffs

As noted above, McAfee lifted its trading blackout and gave former employees, whose options had not already expired, a 90-day opportunity to exercise their options. The 90-day period expired on or about <u>March 20, 2007</u>.

For those former employees whose options had already expired during the blackout, McAfee mailed them checks representing the value of their options. While McAfee has refused to confirm the date that the last checks were mailed to former employees, Plaintiffs received checks dated <u>January 15, 2008</u>. *Id.*, ¶17, Ex. B.

As noted in the Court's October 2008 Order, McAfee has disclosed that approximately <u>690</u> former employees received either a cash payment for their expired options or an extended 90 day period to exercise their options. Former employees with expired options received cash payments totaling <u>$5.2 million</u>. With respect to former employees allowed to exercise their

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA      5

unexpired options, McAfee recorded a compensation charge of $14.0 million (applied to 2007) and $4.3 million (applied to 2006), for a total of $18.3 million, based on the value of the options. Thus, the total relief provided to former employees is $23.5 million. *Id.*, ¶¶18-22, Ex. D.

### E. The Court Grants Plaintiffs' Motion For Attorneys Fees And Costs

On May 7, 2008, Plaintiffs filed their motion for attorneys fees and costs. *Id.*, ¶18. Plaintiffs contended that they were entitled to an award of attorney fees and costs under California's Private Attorney General Doctrine under a catalyst theory because they successfully obtained relief from Defendants as a consequence of this litigation. McAfee filed its papers in opposition to the motion on August 29, 2008, claiming there was no causal connection between this litigation and McAfee's actions; that Plaintiffs' lawsuit had no merit; and that Plaintiffs were not entitled to an award of fees and costs. *Id.*

The Court heard oral argument on both motions on September 22, 2008. *Id.* On October 17, 2008, the Court granted Plaintiffs' motion for attorneys fees and costs. *Id.*, ¶19. The Court held that there was a causal connection between the lawsuit and McAfee's decision to provide relief. *Id.*, Ex. A., Order at 6:23-24. The Court also held that Plaintiffs' action had enforced a important right affecting the public interest, noting that the contractual-based right to exercise stock options affects a great number of people. *Id.*, 10:3-5. Notably, evaluating the extensive evidentiary record before it, the Court found that "nearly 700 individuals received approximately $23 million in recovery as a result of Defendant's provision of Plaintiffs' desired relief in early 2008." Accordingly, the Court held that "this litigation had a beneficial impact on a sufficiently large group of private parties to warrant a fee award under § 1021.5." *Id.*, 10:17-21.

## III. ARGUMENT

### A. McAfee Completed The Provision Of Class Relief No Earlier Than January 15, 2008, And As Late As March 20, 2008

In its October 17, 2008 Order, the Court first asked for a determination of "the exact dated on which Defendant completed provision of relief to former employees who are members of the putative class." *Id.*, 12:6-7. There are several possible dates to choose from.

As noted above, after McAfee lifted its blackout, it gave former employees, whose options had not already expired, a 90-day opportunity to exercise their options. The 90-day

LAW OFFICES COTCHETT, PITRE & MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA

6

period expired on or about March 20, 2007. For former employees whose options had already expired during the blackout, McAfee mailed checks representing the value of their options. While Plaintiffs do not know when the last checks were mailed to former employees, Plaintiffs received checks dated January 15, 2008. Molumphy Decl., ¶¶22-23. Further, according to McAfee's most recent Form 10-Q, all former employees had received either cash payments or a 90-day period to exercise their options as of March 31, 2008. *Id.*, Ex. D.

Thus, while only McAfee knows the precise date that it "completed" providing relief to former employees, the date is no earlier than January 15, 2008 and potentially as late as March 20, 2008 or March 31, 2008. To be conservative, Plaintiffs have used the earlier date of January 15, 2008 with respect to their fee request described below.

**B.    Plaintiffs Request An Award Of Fees Based On Their Work Performed Up Until January 15, 2008**

**1.    Under California Law, A Fee Award Should Be Based On Counsel's Lodestar And, If Appropriate, A Reasonable Multiplier**

The Court's October 17, 2008 Order also asked for a determination of "the fees incurred by Plaintiffs' counsel under applicable California law." *Id.*, Ex. A, Order at 12:8.

Under California law, the Court first determines a firm's lodestar to calculate an appropriate fee award pursuant to Section 1021.5. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579-80 (2004); *Paulson v. City of San Diego,* No. Civ. 89-0820GT(LSP), 2007 U.S. Dist. LEXIS 43587, at *11 (S.D. Cal. June 13, 2007); *Lealao v. Benefit Cal.*, 82 Cal. App. 4th 19, 39 (2000). A lodestar is calculated by multiplying the reasonable hours expended by a reasonable hourly rate. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). Declarations by the supervising attorney describing the work performed are typically used to support an award of attorney's fees. *Id.* at 255; *see also* N.D. Cal. Civil L.R. 54-6(b) (requiring declaration describing services rendered and time spent by each person, relevant qualifications and experience, manner in which time records maintained, and customary hourly charges).

Next, under California law, the Court determines whether the lodestar figure should be adjusted by applying a "multiplier" to take into account factors relevant to a particular case and to better approximate the market value of the attorneys' services. *Ketchum v. Moses* 24 Cal. 4th

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA      7

1122, 1134 (2001); *Lealao v. Benefit Cal.,* 82 Cal. App. 4th 19, 41 (2000). Adjustment of the lodestar serves to "'fix the fee at the fair market value for the legal services provided.'" *Ketchum*, 24 Cal. 4th at 1134 (quoting *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000)).

> [T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano III*. The adjustment to the lodestar figure . . . is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorneys fees. In this case, for example, the lodestar was expressly based on the general local rate for legal services in a *noncontingent* matter, where a payment is certain regardless of outcome.

*Id.* at 1138 (italics in original).

California courts identify several factors by which a lodestar amount can be adjusted, including: (1) the results achieved and how many people have benefitted, (2) the novelty and difficulty of the questions involved and the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *Lealao*, 82 Cal. App. 4th at p. 40-41, n.8; *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("*Serrano III*"); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1417 (1991).

### 2. Plaintiffs' Counsel Request An Award Representing Their Lodestar As Of January 15, 2008 And A Multiplier Of Three

Plaintiffs' counsel respectfully request approval of an award of attorneys' fees in the amount of $686,122.50. The requested amount represents (1) the Cotchett firm's "lodestar" (hours multiplied by customary hourly rate) of $228,707.50 for all time spent in this litigation until January 15, 2008, with a multiplier of three.[1] Consistent with California law and Civil Local Rule 54-6, Plaintiffs have provided a detailed lodestar report for all Cotchett employees working on this case – including a description of the employees, the time spent and nature of their work, and their customary hourly rate. *Id.*, ¶¶24-37

---

[1] The lodestar does not include any time spent after January 15, 2008, including on such matters as briefing and arguing McAfee's motion for summary judgment.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA**

8

The Cotchett firm's modest lodestar reflects time devoted to the initial investigation of the case, witness interviews, drafting the complaint, opposition to defendants' motion to dismiss based on SLUSA preemption and standing arguments, preparation of an amended complaint, discovery, settlement discussions, and correspondence with clients and opposing counsel. *Id.* The lodestar is a fair reflection of months of litigation that ultimately helped to produce a substantial recovery for Plaintiffs and other McAfee former employees. *Id.* At the same time, the lodestar reflects genuine efforts by Plaintiffs' counsel to focus efforts at trying to resolve the action and not spend an inordinate amount of time on matters that would not ultimately benefit the class. *Id.*[2]

In addition, several factors identified by California courts for adjusting a lodestar figure <u>upward</u> also exist in this case.

<u>First</u>, as determined by the Court in the underlying motion for attorneys fees, the class action unquestionably achieved a substantial result for almost 700 former employees of McAfee. Approximately $23.5 million in benefits were ultimately paid to putative class members, whereas McAfee refused to pay anything before the suit was filed. *Id.*, ¶41; Order at 10.

Indeed, the requested fee of $686,122.50 represents just 2.91% of the total $23.5 million value of relief. California courts frequently compare a firm's lodestar and requested multiplier to the percentage that it represents of the overall recovery to others. This percentage "cross-check" provides a "credible measure of the market value of the legal services provided." *Lealao*, 82 Cal. App. 4th at 48-49. In *Lealao*, the court approved fees representing 24% of the total recovery, holding:

> intermediate appellate courts in this state have, in effect, adopted the common federal practice of "cross-checking" the lodestar against the value of the class recovery (which is not duplicative because the amount or value of the recovery is not reflected in the basic lodestar), because the award is still "anchored" in the time spent by counsel on the case, and the practice is therefore consistent with the mandate of *Serrano III*. . . .

---

[2] Thus, for example, after the pleadings were resolved when McAfee filed its answer on November 2007, Plaintiffs' counsel devoted much of its efforts to trying to resolve the case, rather than immediately taking merits depositions or moving for class certification. The amount of time spent by the Cotchett firm reflects efforts to streamline the litigation.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA    9

*Id.* at 45, 51 (footnote omitted); *see also Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (approving fee award amounting to 25% of recovery); *Trew v. Volvo Cars of N. Am., LLC,* No. Civ. S-05-1379 RRB EFB, 2007 U.S. Dist. LEXIS 55305, at *15 (E.D. Cal. July 30, 2007) (applying lodestar cross-check to catalyst fees case: "The fee of $1,385,000 is roughly 5% of the potential common fund secured by the action."); *Beasley*, 235 Cal. App. 3d at 1412 (approving fee award of $1,958,509, which amounted to 37% of the total recovery).

Second, an upward enhancement is warranted given the contingent terms of counsel's employment, reflecting both the risk of nonpayment with an unfavorable outcome and the extent to which the litigation precluded other employment by the attorneys. *Ketchum*, 24 Cal. 4th at 1132-33, 1138. California courts hold that a contingency enhancement reflects that "[a] contingent fee must be higher than a fee for the same legal services paid as they are performed." *Id.* at 1132. Here, Plaintiffs' counsel litigated this case for over a year, and advanced all expenses, without receiving any compensation and risking an uncertain recovery. Molumphy Decl., ¶40. While McAfee announced its intention to change its policy after the complaint was filed, it then actively litigated the case, filed a motion to dismiss, denied class action allegations in its answer, resisted discovery and, most recently, filed a motion for summary judgment. *Compare*, *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 835 (2001) (defendant never contested plaintiffs' legal claims and tried to settle case and pay reasonable attorneys' fees almost immediately after the complaints were filed).

Finally, the case involved novel and complex legal questions. At its core, the case depended on the parties' interpretation of complex stock option agreements, impacting hundreds of employees over several years, and alleged federal securities trading restrictions. At the motion to dismiss stage, McAfee asserted that the entire case should be dismissed based on federal preemption under SLUSA, requiring the parties to analyze the application of federal securities statutes to stock option plans and claims made under such plans. This was not an issue with extensive legal precedent. McAfee further asserted that its remedial actions stripped Plaintiffs of legal standing, again raising novel issues that required detailed factual analysis of

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA    10

1  McAfee's actions compared against the damages available to Class members. When McAfee's
2  motion to dismiss was overruled, it filed an answer denying virtually every allegation and
3  asserting numerous affirmative defenses. For example, McAfee took the position that it was
4  legally precluded from allowing former employees to exercise and, presumably, extending their
5  exercise period beyond the blackout. McAfee challenged Plaintiffs' right to conduct discovery
6  pending class certification and concerning absent Class members. Throughout this process,
7  Plaintiffs' counsel acted diligently to ensure recovery for the seven named Plaintiffs, as well as
8  all other McAfee employees denied the ability to exercise their stock options. Molumphy Decl.,
9  ¶¶8, 39.
10  All of these considerations support an upward adjustment of the lodestar. As one
11  California court explained:

> . . . Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior.

*Lealao,* 82 Cal. App. 4th at 47. The requested lodestar of three also comports with similar multipliers approved in other cases. *See, e.g., Wershba,* 91 Cal. App. 4th at 255 ("[m]ultipliers can range from 2 to 4 or even higher"); *Glendora Community Redevelopment Agency,* 155 Cal. App. 3d at 479-480 (approving multiplier of 12); *Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 82-83, 85 (1988) (approving multiplier of approximately 3); *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (trial court had discretion to award multiplier of 2, 3, 4, or another number); *Paulson,* 2007 U.S. Dist. LEXIS 43587 at *14-17 (applying multiplier of 2 for underlying litigation and no multiplier for the fees on fees litigation).

### 3. **Plaintiffs' Counsel Requests Reimbursement Of $4,996.23, Representing Reasonable Expenses Advanced**

Costs under the private attorney general statute are determined under the general costs statute, California Code of Civil Procedure Section 1033.5. *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1283 (2007) ("Code of Civil Procedure section 1021.5 authorizes recovery of attorney fees by the prevailing party. Since the statute does not mention costs, we conclude the

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA   11

Legislature intended Code of Civil Procedure section 1033.5, the general costs statute, to apply.")

The Cotchett firm advanced litigation expenses of $4,996.23 through January 15, 2008 to fund this action. *See* Molumphy Decl., ¶42. These expenses fall within the purview of categories of costs covered by Section 1033.5. Accordingly, Plaintiffs' counsel respectfully request that the Court approve reimbursement of $4,996.23 in expenses.

## IV.  CONCLUSION

Consistent with the Court's Order approving an award of fees and costs based on the substantial relief obtained for Class members, Plaintiffs respectfully request that the Court issue a Report and Recommendation finding that (1) McAfee completed the provision of relief to former employees no later than January 15, 2008 and (2) Plaintiffs' counsel, Cotchett, Pitre & McCarthy, is entitled to an award of $686,122.50 in attorneys fees ($228,707.50 lodestar with multiplier of three) and $4,996.23 in costs.

Date: October 31, 2008            COTCHETT, PITRE & MCCARTHY

By:   /s/
      MARK C. MOLUMPHY

*Attorneys for Plaintiffs and the Class*

LAW OFFICES COTCHETT, PITRE & MCCARTHY

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REPORT AND RECOMMENDATION TO AWARD ATTORNEYS FEES AND COSTS TO PLAINTIFFS; MPA    12